Good morning. May it please the court, my name is Gia Kim, appearing on behalf of Appellant Antonio Hinojosa. I'd like to reserve two minutes of my time for rebuttal. Mr. Hinojosa's minimum release date was extended by a year because of an amendment to California Penal Code, section 2933.6, which governs custody credits for inmates placed in a security housing unit known as the SHU. The amendment eliminates custody credits for inmates who, upon validation as a prison gang member or, as in Mr. Hinojosa's case, as a prison gang associate. This court should grant habeas relief because, as applied to Mr. Hinojosa, the amendment violates the ex post facto laws. Once gang validation is done by the administrative process, is there a method by which that gang validation can be ended? Yes, Your Honor. What is that process? There are a couple methods. First, upon the expiration of six years from the last documented gang activity, there is a review of active status. So if there is no new information after six years, the inmate may be, his status may be changed from active to inactive. Also, there is a debriefing process that exists in which the inmate may affirmatively take steps to indicate that he is withdrawing from the gang. And was there a, the debriefing process, was that in effect in 2009 when Mr. Hinojosa was validated? Yes, I understand that it was. At that point, when he was validated, it would not affect his custody credits to undergo that process, but it would, if successful, result in him being transferred out of the security housing unit where there are lesser privileges. Also, if he participated in debriefing, part of which I take it is informing the authorities of his knowledge of any gang activity and gang associations. In other words, as the, as said in the vernacular, turning over. That would not reinstate his credits under 2933.6? It would now. At the time he was validated, debriefing had no effect on his sentence. And when, when did it become effective as a method of reinstating his credits? It, it would have upon the effective date of the statute, which was January 25th, 2010. So that on January 25th, 2010, being notified that his credits would be impeded by the gang validation, if he said, I want to debrief right now, he would have lost no credits going forward. It's unclear whether he would get credit for the time he was in the debriefing process, which according to the Samson case can take about 19 months. But assuming that he went through debriefing and even if you complete all the steps, it is discretionary that assuming that he was successful in all of those steps, then yes, at some point he could resume credit earning status. So to a certain extent, the ability to gain credits was in his hands. That is how, yes, I would agree with that in general, that yes, it was in his hands. However, we would argue that this is an extra condition that he would have to fulfill. And he alleged that it was a dangerous process to give information against a prison gang while in custody and that this was not a condition, for purposes of ex post facto condition, this was not a condition that he had to undergo at the time he was convicted, sentenced, or possessed the items that resulted in his validation. But his conviction was irrelevant to the validation process. Validation is independent of the grounds of conviction, correct? In this case, none of the items used to validate him were related to his conviction. However, one of his convictions did involve criminal street gang activity. If his conviction had been for forgery, it would have made no difference. He could have been  Yes, Your Honor. So what this, in effect, does is the prison, which is concerned about gang activity within the prison facility, it cannot deny him credits, even though he is independent of his conviction, committed acts within the prison that justify his being placed in the SHU? It's a matter of timing, Your Honor. It can, going forward, to inmates, we would argue, were either convicted after the amendment passed, or even validated after the amendment passed. If he was possessing a birthday card, the last of which happened in 2009, about a year before the amendment passed, at the time he possessed those items, he was not on notice that that would result in the future loss of custody credits, and he was not under any obligation to affirmatively debrief. And this is akin to what the Supreme Court discussed in Weaver v. Graham. It discussed this under the prong of the ex post facto analysis, not as to whether it's retrospective, but whether it disadvantages the offender. Florida, in Weaver, had argued that this actually didn't disadvantage him because the inmate in that case could still earn the gain time credits, I think they were called, by complying with certain conditions. However, the Supreme Court said that, looking at the effect rather than the form of that law, it imposed extra conditions that weren't in place at the time of that inmate's conviction, and therefore it did disadvantage him. So, of course, the prison can impose a system of custody credits. However, the question here is whether it can change that midstream, and the Supreme Court has emphasized in cases such as Weaver v. Lentz that the purpose of the ex post facto clause is to protect the right to fair notice and governmental restraint, and to, in the to legislatively modify the bargains it has made with its subjects. It seems to me that by removing his credits going forward, the authorities are not increasing the penalty for his 2003 conviction. What they're doing is punishing him for being a to the sentence for that conviction. Not really, because as we just discussed a moment ago, had the sentence been for forgery and there had been no street criminal gang association at all, the gang validation would still work to deprive him of the credits going forward. We would submit that it's not punishment for this gang activity because there's no independent charge being brought. It lengthens the sentence for the underlying conviction, whether that conviction was for robbery with gang activity here or for forgery. That is the only sentence in question here, and as in Weaver, the state argued that this gain time wasn't an ingredient of that original sentence. But again, the Supreme Court said that the important thing was to look at the effect of the law, and the effect was to increase his punishment for that conviction. If there are no further questions, I will now turn it over to Pamela B. Hooley. Good morning, and may it please the Court. Deputy Attorney General Pamela B. Hooley, on behalf of the Respondent Apelli Warden. The District Court's decision here is actually entitled to ad pedeference because the summary denial by the California Supreme Court reflected a decision on the merits, as explained in recent Supreme Court case law such as Harrington v. Richter and Cullen v. Penholster. Pretty clear in the state court determination that they're simply saying you picked the wrong venue. That was correct, Your Honor, in the Superior Court, but each court in California has original jurisdiction, and given that each court has original jurisdiction, the review by each court at a higher level is independent and de novo, and therefore the court looks at the entirety of all the claims. For example, in later courts, Mr. Hinojosa raised a claim of ineffective assistance of counsel. It is presumptively denied on the merits in this case. Similarly, the denial of the ex post facto claim is entitled to a determination that it was on the merits because the Supreme Court was looking at that on a de novo basis. Indeed, if the court had been persuaded that venue was a problem and the matter should have been sent down, the higher court could have done a dismissal without prejudice to an appropriate venue. But given the timing of Mr. Hinojosa's petition to the California Supreme Court, it's very likely that they were denied on the merits because they had recently denied review in Sampson and in F. Staff U, which were the two California appellate decisions finding no ex post facto problem with this law. So it's your position that there's no clearly established Supreme Court case which is contrary to the determination by the California Supreme Court in this post card denial? Yes, Your Honor, and that Nevarez was properly decided and this court should similarly affirm the district court's decision. But even still, if the court were to engage in a de novo review, the case law does make clear that there's no ex post facto problem in this case because, as the court has pointed out, there was no change to the underlying 16-year sentence. There was no taking of Mr. Hinojosa's previously earned credits. What about Weaver? That case, Your Honor, was predicated on nothing that the inmate had done after the adoption of the statute. In contrast, in this case, California recognizes that if an inmate is and his status is that he is still affiliating with his gang, he is housed in the shoe. Mr. Hinojosa could have engaged in the debriefing process, and then he would have been able to eliminate his association with the gang. But having gotten notice of the change in the statute, he did not take any such affirmative steps. So his loss of the ability to earn credits. Thus, there is no ex post facto issue with the application of that statute to him. And on that basis, the district court's decision should be affirmed. All right. Thank you very much. Thank you. Do you agree with your learned opponent's position that Ed Pepp lies? No, Your Honor. And this court has, since Richter and Johnson v. Williams, continued to apply the look-through presumption to postcard denials from higher California courts. And as Your Honor mentioned, in the superior court's order, it says ex post facto at ER2, and it clearly does that on the purely procedural ground of improper venue. I would just like to draw the court's attention to one other fact, which is that Mr. Hinojosa was a gang validated as a prison gang associate, not a prison gang member. Sampson involved a prison gang member. Those two are differently defined. A member is someone who has been accepted into active membership. An associate is someone who periodically or regularly is involved with members or associates of a prison gang. That difference, I think, is important as to the ongoing nature of the misbehavior. Whether one agrees with the California Court of Appeals' reasoning that prison gang membership is ongoing until it's disavowed, prison gang association turns on conduct. And here we'd argue that the last conduct was on February 26, 2009. Thank you. Thank you very much. Thank you. All right. The case of Hinojosa v. Gibson will be submitted. Thank you very much for a good argument.
judges: Fernandez, Fisher, Bea